PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
PRICE AND ASSOCIATES
A Professional law Corporation
1611 Telegraph Avenue, Ste. 1450
Oakland, CA 94612
Telephone: (510) 452-0292
Facsimile: (510) 452-5625

JOHN L. BURRIS, ESQ. (STATE BAR NO. 69888)
Law Offices of John L. Burris
7677 Oakport Street, suite 1120
Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882

CHARLES STEPHEN RALSTON, ESQ. (STATE BAR NO. 34111)
Attorney at Law
2421 Valley Street
Berkeley, CA 94702
Telephone: (510) 540-9683
Facsimile: (510) 540-9685

Attorneys for Plaintiff
DEANNA J. FREITAG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA J. FREITAG<br><br>                Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>                Defendants. | CASE NO. C-00-2278 TEH<br><br>**PLAINTIFF'S MEMORANDUM ON REMANDED ISSUES**<br><br>**Date:      June 4, 2007**<br>**Time:     10:00 am**<br>**Courtroom: 12, 19th Floor**<br>**Hon. Thelton E. Henderson** |

0
Plaintiff's Memorandum on Remanded Issues
Freitag v. Ayers C-00-2278 TEH

**TABLE OF CONTENTS**

I. PLAINTIFF'S LETTER TO DIRECTOR TERHUNE WAS PROTECTED BY THE FIRST AMENDMENT TO THE CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . 1

II. THE COURT'S INSTRUCTIONS TO THE JURY ON THE RETALIATION CLAIM WERE HARMLESS ERROR . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR RETALIATING AGAINST PLAINTIFF BECAUSE SHE EXERCISED HER FIRST AMENDMENT RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. PLAINTIFF IS ENTITLED TO THE FULL AMOUNT OF DAMAGES AND ATTORNEYS' FEES ALREADY AWARDED, WITH INTEREST . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF AUTHORITIES

*Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 7

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Coursen v. A. H. Robins Company, Inc.*, 764 F.2d 1329 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . 4

*Deveraux v. Perez*, 218 F.3d 1045 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Garcetti v. Ceballos*, 547 U.S. ___, 126 S. Ct. 1951 (2006) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410 (1979) . . . . . . . . . . . . . . . . . . . . . . 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Larez v. Holcomb*, 16 F.3d 1513 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Perry v. Sinderman,* 408 U.S. 593 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*,
    391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Plaintiff Deanna J. Freitag, by her undersigned counsel and pursuant to the Court's order of April 16, 2007, presents her memorandum on the issues remanded by the Ninth Circuit and related issues relating to her claim of retaliation because of the exercise of her rights under the First Amendment to the Constitution of the United States.

## I.
## PLAINTIFF'S LETTER TO DIRECTOR TERHUNE WAS PROTECTED BY THE FIRST AMENDMENT TO THE CONSTITUTION

In light of the intervening decision of the United States Supreme Court in *Garcetti v. Ceballos*, 547 U.S. ___, 126 S. Ct. 1951 (2006), the Ninth Circuit remanded to this Court the following issue:

> Whether Freitag's April 15, 1999 letter to [CDRC Director] Terhune is protected under the First Amendment . . . .   We are unsure whether prison guards are expected to air complaints regarding the conditions in their prisons all the way up to the Director of the CDCR at the state capitol in Sacramento.  We are not aware, for example, what the union contract provides with respect to the persons to whom such grievances may or must be presented.

*Freitag v. Ayers*, 468 F.3d 528, 546 (9th Cir. 2006).

Plaintiff contends that her letter to Director Terhune clearly is covered by the First Amendment because she was not required by the union contract, her job description, or in any other manner to write to the Director.   Accompanying this memorandum is plaintiff's declaration, which states, unequivocally:

> I was not required by my job description, the scope of my duties, the provisions of the union agreement, or any other directive or regulation by the California Department of Corrections to send a complaint or grievance to Director Terhune relating to the sexual harassment by inmates or the failure of the administration at Pelican Bay to deal with the problem.

Declaration of Deanna Freitag in Support of Plaintiff's Memorandum on Remanded Issues, p. 2, paragraph 4 (hereinafter "Freitag Declaration").   Her declaration is based on her personal knowledge of her job duties, her job description, and the provisions of the union contract. Freitag Declaration, p. 2, paragraph 3.   She further states:

> After I wrote to Director Terhune he telephoned me in order to discuss the problem further.  At no time did he state or suggest that it was part of my official duties to write to him or otherwise to communicate to him concerning these problems.

Freitag Declaration, p. 2, paragraph 4.  Therefore, she "wrote to the Director as a citizen in order to bring important problems to the attention of the public official who had the authority to deal with them." *Ibid*.

There is nothing in the record presently before the Court that even suggests that writing the letter to Director Terhune was part of her official duties; that is, it was not "part of what [s]he, [as a correctional officer] was employed to do."  *Garcetti v. Ceballos*, 126 S. Ct. at 1960.  It must be kept in mind that the *Garcetti* rule is a limited one.  The Supreme Court took pains to reaffirm its long line of decisions holding that governmental employees enjoy the protection of the First Amendment when they express their views as to matters of public importance, including situations, as here, when they "expressed [their] views inside [their] office" and when the communication  "concerned the subject matter of [their] employment."   126 S. Ct. at 1959.  Rather, the "controlling factor" was that the expressions "were made pursuant to [the employee's] duties." 126 S. Ct. at 1959-60.  The Court noted that Mr. Ceballos did not dispute that he prepared the memorandum at issue as part of his assigned duties and that writing such memoranda was part of what "he was employed to do." 126 S. Ct. at 1960.  That is, "when he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee."  *Ibid.*

The Court went on to make it clear that the rule it was announcing was:

> limited in scope: It relates *only* to the expressions an employee makes pursuant to his or her official responsibilities, not to statements or complaints (such as those at issue in cases like *Pickering* and *Connick*) that are made outside the duties of employment.

126 S. Ct. at 1961.  (Emphasis supplied.)   Moreover, the Court cautioned that employers could not restrict employees' rights "by creating excessively broad job descriptions."   126 S. Ct. at 1961.  Rather, the proper inquiry was a practical one and involved an examination of the "duties an employee actually is expected to perform."  126 S. Ct. At 1961-62.

Once again, there is nothing in the record to suggest that the writing of the letter to Director Terhune was either required or expected to be performed by plaintiff as part of her job

duties.[1]  There was no reference at trial to any administrative rule or regulation governing communications between the rank and file officers and the Director.   In contrast, preparation of internal complaint forms concerning inmate misbehavior was part of plaintiff's job duties and, as the Ninth Circuit held, was not protected by the First Amendment within the rule of *Garcetti*.   In the absence of a clear demonstration by the defendants that writing the letter to Director Terhune was in fact and at the time a job requirement, plaintiff's action in so doing was protected by the First Amendment.

## II.
## THE COURT'S INSTRUCTIONS TO THE JURY ON THE RETALIATION CLAIM WERE HARMLESS ERROR

The second issue remanded by the Ninth Circuit was:

> [W]hether the jury instruction, which included as examples of protected speech either two or three items of unprotected speech, was more probably than not harmless. . . . In other words, is it more likely than not that the jury verdict was not affected by the erroneous inclusion of the two or three examples of unprotected speech?

468 F.3d at 546, citing *Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir. 2001), that an error in instructions in a civil case requires reversal only where the error "is not 'more probably than not harmless.'"   Plaintiff contends that the inclusion of two examples (excluding the third, which was the letter to Director Terhune) was indeed harmless error.[2]

---

[1] The deposition testimony of Director Terhune that was introduced at trial does not suggest that the communication from Ms. Freitag was required by her job duties.   Mr. Terhune testified that he received letters from officers fairly regularly and it was just "one of those things."   He would read many of them and an administrative assistant "would normally review them" and that some were probably screened out.   Transcript of Trial, Vol. 15, pp. 2455-56.

[2] Plaintiff notes a question not addressed by the Court of Appeals, namely, whether the defendants preserved the issue of erroneous jury instructions.  *See, Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir. 1989).   In *Benigni*, two years after the trial, the Supreme Court issued its decision in *City of Dallas v. Stanglin*, 490 U.S. 19 (1989) ruling that the same conduct involved in *Begnini* – the activity of dance-hall patrons – was not protected by the First Amendment.   Although the decision in *Stanglin* placed "the validity of Benigni's first amendment claims into serious doubt" the Ninth Circuit did not reach that issue because the city "did not specifically object to the first amendment jury instructions" and, therefore, the challenge was not properly presented to the trial court.   879 F.2d at 477.   Similarly, here, the defendants did not object to the jury instruction at issue or propose a more limiting instruction of their own even though the

In determining whether an erroneous jury instruction constituted harmless error the Ninth Circuit has looked at a number of factors, including the totality of the jury instructions (*Coursen v. A. H. Robins Company, Inc.*, 764 F.2d 1329, 1337) (9th Cir. 1985)) and arguments of counsel (*Larez v. Holcomb*, 16 F.3d 1513, 1520 (9th Cir. 1994)).   Examining the record as a whole, it is clear that it is unlikely in the extreme that the jury verdict was affected by the inclusion of the examples of plaintiff's filing 115 and 837 forms documenting inmate misbehavior.

With regard to the jury instructions, the only example that could be interpreted as a reference to the internal report forms is contained in the first example:

Examples of speech protected by the First Amendment include:

a)   Reporting sexually hostile inmate conduct to agents of the California Department of Corrections, either formally or informally;

Instruction to the Jury No. 30. Docket Entry No. 272, quoted at 468 F.3d at 544.   The other examples related to documenting and informing officials of the failure of Pelican Bay's responses to sexual misconduct or to communications to Director Terhune, Senator Polanco, and the OIG regarding prisoner misconduct,  which are protected by the First Amendment pursuant to the decision of the Ninth Circuit.[3]

Other portions of the instructions and the verdict form state the First Amendment claim in the context of plaintiff's "complaints about inmate sexual misconduct or her complaints about Defendant California Department of Corrections' response to inmate exhibitionist masturbation." See, Verdict Form page 3, Question No. 7, Docket Entry 277.   Similarly, the defendants' proposed verdict form cited plaintiffs's "oral or written opposition to CDC's alleged failure to stop or reduce the frequence of the inmate sexual misconduct" without limiting the First

---

issue of whether the First Amendment protected speech that was part of a public employee's job duties was pending in the Ninth Circuit in *Garcetti* at the time of the trial here.

[3]In its decision, the Ninth Circuit refers to "two or three items" of unprotected speech. The items clearly include (a), formal or informal reports, and (c) the letter to Director Terhune. The third item referred to is evidently (b), the documentation of the prison's failure to respond to the formal reports of sexually hostile inmate conduct.   As will be discussed below, the clear focus of the First Amendment claim was on the letters to Director Terhune and Senator Polanco.

Amendment activies by excluding the formal reports.   See, Defendants' Proposed Special Verdict, Section III, page 6, no. 2, Docket Entry 267.  *See also*, defendants' proposed jury instructions describing plaintiffs' claim that she had "expressed her belief to others that the Department of Corrections was not taking reasonable and adequate measures to eliminate or reduce the frequency of inmate exhibitionist masturbation in the Pelican Bay State Prison Security Housing Unit."   Defendants' Proposed Special Instruction No. 17, Docket Entry 150, p. 20.[4]

Simply stated, the entire focus of plaintiff's First Amendment retaliation claim was that adverse and punitive actions were taken by defendants Ayers and Schwartz because plaintiff had written to Director Terhune and to Senator Polanco.   Her testimony at trial regarding retaliatory acts by those defendants dealt with what happened to her *after* she had exercised her First Amendment rights by writing to Director Terhune and Senator Polanco.

Arguments of counsel were limited and specific.   In her opening argument, Attorney Price stated:

> Teresa Schwartz doesn't respond to that memo.   So on that day [April the 15th] Office Freitag went outside the institution and shined a light on the problem of exhibitionist masturbation.   She went to her state senator, and she went to Director Cal Terhune
>
> Immediately, within a matter of days, the Warden and Teresa Schwartz ordered her to go for a fitness for duty evaluation.

Transcript of Trial, Vol.16, p. 2720.   Further,

> That's this case, ladies and gentlemen.   Deanna Freitag became an enemy of the state when she went to Director Terhune, and the folks at Pelican Bay decided, "We have got to destroy her credibility."
>
> * * *
>
> So what do they do?  Very first thing, they send her for a fitness for duty evaluation.   "You must be crazy."   They send her out for that.

Transcript of Trial, Vol. 16, pp. 2723-24.   *See also*, p. 2749, ll. 18-25; 2750, ll. 1-9.

In his rebuttal argument, Attorney Burris was very clear as to what the First Amendment

---

[4]*See*, *Benigni v. City of Hemet*, 879 F.2d at 477, holding that even though the plaintiff's First Amendment claim was invalid under new Supreme Court precedent, the defendant had not presented a challenge to the claim because of its proposed alternative jury instruction.

claim was:

> The next two is whether or not she – when she exercised her First Amendment right – that is, the filing the complaint or the letters – and they are in evidence, letter to Director Terhune that took place in '99 and the letter to Statesman Polanco – did something happen to her? Did she start getting treated differently? Did she start having her conditions for employment change as a consequence of that?
>
> Because we know if you look and do an analysis of what happened after April 15th, we know, number one, that Warden Ayers wrote the so-called letter after he received – April 15, she writes the letter to Terhune.

Transcript of Trial, Vol 16, pp. 2811-12.

> And that's what we have here. When she went outside and complained to the Department about an internal problem, everyone in that chain was being exposed as not taking care of business. And then, lo and behold, it gets even worse. Which she goes to the State Senator, Polanco, and you get all the political machinations taking place. And so then you get the O.I.G.
>
> * * *
>
> But if you go to the analysis and say, "Okay, we've got these two different public statements," as an consequence of making these public statements, did something happen to her that otherwise wouldn't have happened but for making those statements? I would submit to you, ladies and gentlemen, that if you look at these adverse action matters, the ones that ultimately caused her to be terminated, not one of those investigations justified termination, either individually or collaterally.

Transcript of Trial, Vol. 16, pp. 2818-19.[5]

Thus, just as in *Larez v. Holcomb*, there is "no evidence, and little suggestion in the arguments of counsel, that the district court's instruction . . . might have infected the jury's determination of liability." 16 F.3d at 1520. Rather, the evidence in the record amply supports the jury's verdict that defendants Ayers and Schwartz retaliated against plaintiff because of the exercise of her First Amendment rights when she wrote to Director Terhune and Senator Polanco. Therefore, the error in the jury instructions was harmless and the verdict should stand.

---

[5] Defendants' counsel also focused on the communications with Director Terhune and Senator Polanco, and not on the formal complaints of inmate misbehavior, in discussing the evidence of whether defendants had retaliated against Ms. Freitag because she exercised her First Amendment rights or whether the adverse actions were taken for valid reasons. *See,* Transcript of Trial Vol. 16, pp. 2783-84; 2789; 2792.

### III.
### THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR RETALIATING AGAINST PLAINTIFF BECAUSE SHE EXERCISED HER FIRST AMENDMENT RIGHTS

The defendants have announced that they will claim qualified immunity for retaliating against plaintiff because she exercised her First Amendment rights. Plaintiff will address the issue briefly with regard to whether it was clear that retaliating against her for the letters to Director Terhune and Polanco were protected by the First Amendment. *See*, *Deveraux v. Perez*, 218 F.3d 1045, 1051 (9th Cir. 2000).[6]

As plaintiff has already noted in her reply to the defendants' opposition to her motion for interim fees and costs, the defendants can not seriously claim that the law was uncertain as to the protection enjoyed by her communications to the Director or to the State Senator. As the Supreme Court stated in *Garcetti*, "It is well settled that 'a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression,'" citing *Connick v. Myers*, 461 U.S. 138, 142 (1983). 126 S. Ct. at 1955.

As long ago as 1972 the Supreme Court held that a public employee could not be subjected to discipline because he or she had testified before a committee of the state legislature as to matters of public importance (*Perry v. Sinderman,* 408 U.S. 593 (1972)), and surely a letter to a state legislator was equally as clearly protected. *See*, *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563 (1968) (letter to local newspaper protected by First Amendment). With regard to the letter to the CDC Director, as long ago as 1979 the Supreme Court held that expressions made at work are protected by the First Amendment as

---

[6]*Devereaux v. Perez* holds that the plaintiff has the burden of showing that the law was clearly established as to the constitutional right involved. The burden of establishing qualified immunity then shifts to the defendants, since it is an affirmative defense. *Benigni v. City of Hemet*, 879 F.2d at 479. As the Supreme Court has held:

> If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

well. *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415-16 (1979). *Garcetti* only limited this general rule by holding that expression that is part of assigned job duties (such as, here, the preparation of Form 115s) is not so protected. 126 S. Ct. at 1960-61.

In short, defendants seem to be urging the rather peculiar argument that because the Supreme Court held favorably to them that *some* of plaintiff's expressive conduct was not protected by the First Amendment, they could not know that other expressive conduct which fell clearly within the scope of decisions going back more than three decades was so protected,. Such a conclusion would be bizarre indeed and, we contend, has no basis in fact or law.

### IV.
### PLAINTIFF IS ENTITLED TO RECOVER THE FULL AMOUNT OF DAMAGES AND ATTORNEYS' FEES ALREADY AWARDED, WITH INTEREST

With the resolution of the remanded issues in plaintiff's favor, and the rejection of defendants' qualified immunity defense, the jury verdict stands and plaintiff is entitled to the full amount of damages and attorneys fees and costs, with interest. Defendants have suggested in the opposition to the motion for interim fees and costs that because the Ninth Circuit reversed the judgment against defendant Lopez, the verdicts against defendants Ayers and Schwartz also cannot stand. This is not the case. The Court of Appeals reversed the judgment against Mr. Lopez because "there is no evidence that he was responsible for, participated in, or even had knowledge of, any adverse employment action taken against Freitag." 468 F.3d at 543, n. 8. The claim against Mr. Lopez was not that he was responsible for Ms. Freitag's termination, and the jury could not have so found. Indeed, the defendants have taken the position that the monetary damages of $500,000 had to have been based on the termination of plaintiff, and that termination was caused by the actions of defendants Ayers and Schwartz. Thus, there can be no reason to assume that the verdict would be any less if Mr. Lopez had not been a defendant.

### CONCLUSION

For the foregoing reasons, the Court should hold that the letter to Director Terhune was protected by the First Amendment, that the jury instruction at issue was harmless error, that there is no basis for the defense of qualified immunity, and that the judgment in favor of plaintiff

should stand in its entirety, including the award of damages and attorneys' fees.

                                                Respectfully submitted,

Dated: April 23, 2007                  PRICE AND ASSOCIATES

                                                /s/
                                            PAMELA Y. PRICE

                                                /s/
                                            JOHN L. BURRIS,

                                                /s/
                                            CHARLES STEPHEN RALSTON,

                                        Attorneys for Plaintiff DEANNA FREITAG