1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   DEANNA L. FREITAG,

11                Plaintiff,                    NO. C00-2278 TEH

12          v.                                  ORDER GRANTING
                                                PLAINTIFF'S MOTION RE:
13   CALIFORNIA DEPARTMENT OF                   REMANDED ISSUES
     CORRECTIONS, et al.,
14
                 Defendants.
15

16

17          This matter came before the Court on Monday, June 4, 2007, on Plaintiff Deanna

18   Freitag's motion regarding the issues remanded to this Court by the United States Court of

19   Appeals for the Ninth Circuit.  After carefully reviewing the parties' written and oral

20   arguments, the record, and relevant law, the Court now GRANTS Freitag's motion for the

21   reasons discussed below.

22

23   **BACKGROUND**

24          On April 2, 2003, a jury found that Defendant California Department of Corrections

25   ("CDC"), now the California Department of Corrections and Rehabilitation ("CDCR"),

26   violated Freitag's rights under Title VII and that Defendants Robert J. Ayers, Jr., Teresa

27   Schwartz, and Augustine Lopez retaliated against Freitag in violation of her First

28   Amendment rights.  Judgment was entered on May 5, 2003, and Freitag subsequently

United States District Court
For the Northern District of California

brought a motion to amend the judgment to include permanent injunctive relief.  On August
18, 2003, this Court granted in part and denied in part Freitag's motion and entered the
following permanent injunction:

> The California Department of Corrections, its agents, officers,
> successors in office, employees and all persons acting in concert
> or participating with the department are permanently enjoined
> from engaging in any employment practices, or taking any other
> personnel action, for the purpose or with the effect of maintaining
> a sexually hostile work environment at Pelican Bay State Prison,
> or otherwise discriminating against any Pelican Bay State Prison
> employee on the basis of sex.  The California Department of
> Corrections, its agents, officers, successors in office, employees
> and all persons acting in concert or participating with the
> department are further enjoined from engaging in any
> employment practices, or taking any other personnel action, for
> the purpose or with the effect of retaliating against any Pelican
> Bay State Prison employee for complaining about, or otherwise
> opposing, practices made unlawful by Title VII.

Aug. 18, 2003 Order Granting in Part & Denying in Part Pl.'s Mot. to Am. J. to Include
Perm. Inj. Relief at 8.  The Court also referred this case to Special Master John Hagar and the
*Madrid v. Gomez* (now *Madrid v. Tilton*) team for "development of a remedial plan to
address the problem of inmate exhibitionist masturbation" at Pelican Bay State Prison.  *Id.* at
9-10.  On July 16, 2004, the Court adopted the Special Master's report and recommendations
with minor modifications and, on October 18, 2004, denied Freitag's request for additional,
more specific injunctive relief to prohibit retaliation.

Defendants timely appealed the jury's verdict and the permanent injunction entered by
the Court.  The United States Court of Appeals for the Ninth Circuit issued its decision
affirming in part, reversing in part, and remanding in part on September 13, 2006, and made
minor amendments to that decision on November 3, 2006.  *Freitag v. Ayers*, 468 F.3d 528
(9th Cir. 2006), *cert. denied*, 127 S. Ct. 918 (2007).  The appellate court affirmed the jury's
verdict on Freitag's Title VII claims and also affirmed this Court's grant of injunctive relief.
*Id.* at 548.  The court reversed the First Amendment retaliation judgment against Defendant
Lopez based on insufficiency of the evidence.  *Id.* at 543 n.8.

The Ninth Circuit remanded the remainder of Freitag's First Amendment claims to
this Court "due to an intervening Supreme Court decision" affecting the types of speech by a

United States District Court
For the Northern District of California

1  public employee that are protected by the First Amendment. *Id.* at 548.   This Court

2  instructed the jury that the following six items were examples of protected speech:

       (a)    Reporting sexually hostile inmate conduct to agents of the California Department of Corrections, either formally or informally;

       (b)    Documenting Pelican Bay State Prison's responses or failures to respond to Plaintiff's reports of sexually hostile inmate conduct;

       (c)    Informing Cal Terhune, Director of the California Department of Corrections, of either sexually hostile conduct or of Pelican Bay State Prison's responses or failures to respond;

       (d)    Informing State Senator Richard Polanco either of sexually hostile inmate conduct or of Pelican Bay State Prison's responses or failures to respond;

       (e)    Reporting either the sexually hostile conduct or Pelican Bay State Prison's responses or failures to respond to the Office of the Inspector General; or

       (f)    Cooperation with the investigation conducted by the Office of the Inspector General.

*Id.* at 544.  The Ninth Circuit considered the validity of this instruction in light of the intervening Supreme Court decision in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006).  The court held that the last three examples listed in the jury instruction were "communications . . . . protected under the First Amendment" because Freitag was acting as a citizen and not an employee when she made the communications and because Freitag's complaints addressed a matter of public concern. *Freitag*, 468 F.3d at 545-46.  However, the court also held that, "[t]o the extent that the jury may have considered internal forms prepared by Freitag, it is clear that, under *Ceballos*, such activity is *not* constitutionally protected.  For purposes of First Amendment analysis, Freitag submitted those reports pursuant to her official duties as a correctional officer and thus not in her capacity as a citizen." *Id.* at 546.  The court remanded to this Court the issue of "[w]hether Freitag's April 15, 1999 letter to Terhune is protected under the First Amendment" because the court was "unsure whether prison guards are expected to air complaints regarding conditions in their prisons all the way up to the Director of the CDCR at the state capitol in Sacramento." *Id.*  The court added that

1  it was "not aware, for example, what the union contract provides with respect to the persons

2  to whom such grievances may or must be presented." *Id.*

3       The Ninth Circuit also remanded to this Court the issue of "whether the jury

4  instruction, which included as examples of protected speech either two or three items of

5  unprotected speech, was more probably than not harmless." *Id.* Because the court remanded

6  Freitag's § 1983 First Amendment claim, it also remanded "the jury's damages award with

7  instructions to reconsider, if necessary [after addressing the harmless error question], whether

8  the $600,000 award of compensatory damages remains valid," as well as remanding "the

9  issue of attorneys' fees for reconsideration, if necessary." *Id.* at 547.

10      On remand, the Court referred this case back to Magistrate Judge Maria-Elena James

11  for a further mandatory settlement conference.  Judge James conducted a settlement

12  conference on March 16, 2007.  The case did not settle, and this motion followed.  The Court

13  now discusses in turn below each issue raised by Freitag's motion.

14

15  **DISCUSSION**

16  **I.     Whether Freitag's Letter to Cal Terhune Was Protected Speech**

17      The Court first considers whether Freitag's April 15, 1999 letter to Cal Terhune, the

18  then-director of the CDC, constitutes protected First Amendment speech.  A public

19  employee's speech is constitutionally protected if the speech relates to a matter of "public

20  concern" and the employee's interests in making that speech as a concerned citizen outweigh

21  the state's interests in controlling and managing its employees.  *Connick v. Myers*, 461 U.S.

22  138, 143 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  The Ninth Circuit

23  held that Freitag's "assertions that inmates at Pelican Bay engaged in sexually abusive

24  behavior with respect to the female guards while the prison's administrators failed to take

25  appropriate corrective measures" clearly address a matter of public concern.  *Freitag*, 468

26  F.3d at 545-46.  Although the court made this statement with respect to Freitag's letter to

27  Senator Polanco and communications with the Inspector General, it applies equally to her

28  letter to Terhune since all three communications concerned the same subject matter.

United States District Court

For the Northern District of California

4

United States District Court

For the Northern District of California

1    Defendants next argue that even if Freitag's letter to Terhune was written as a

2  concerned citizen rather than as a public employee, it was nonetheless not subject to First

3  Amendment protections because the value of allowing her speech does not outweigh "the

4  government's interest in effective and efficient fulfillment of its responsibilities to the

5  public." *Connick*, 461 U.S. at 150.[1]  However, not only was this issue apparently not raised

6  by Defendants on appeal, but *Ceballos* and the error in the jury instruction identified by the

7  Ninth Circuit also have no bearing on the question of disruption of the workplace.  In

8  reaching a verdict for Freitag on her First Amendment claim, the jury necessarily rejected

9  Defendants' disruption argument; the jury could not have reached a verdict for Freitag had it

10  found sufficient disruption to the workplace to outweigh Freitag's right to free speech.

11    Thus, the only issue remaining for this Court's resolution is whether Freitag's letter to

12  Terhune was speech made as a citizen or as an employee.  In *Ceballos*, the Supreme Court

13  held "that when public employees make statements pursuant to their official duties, the

14  employees are not speaking as citizens for First Amendment purposes, and the Constitution

15  does not insulate their communications from employer discipline."  126 S. Ct. at 1960.

16  Ceballos was therefore not entitled to First Amendment protection for writing an internal

17  memorandum to his supervisors regarding what he believed to be misconduct in an

18  investigation because writing such memoranda "is part of what he, as a calendar deputy, was

19  employed to do. . . .  [T]he memo was written pursuant to Ceballos' official duties.

20  Restricting speech that owes its existence to a public employee's professional responsibilities

21  does not infringe any liberties the employee might have enjoyed as a private citizen."  *Id.*

22    Here, the Court is convinced that Freitag's letter to Terhune did not "owe[] its

23  existence to [Freitag's] professional responsibilities."  *Id.*  Although it is undisputed that

24  Terhune, as the departmental director, represented the third level in the grievance process,

25  there is no evidence that Freitag's letter was part of any grievance; in fact, the evidence at

26  trial points to the contrary.  For example, Warden Ayers testified that he was not "ever

27  presented with the [sic] grievance by or on behalf of Officer Freitag concerning Pelican

28

---

[1]Defendants incorrectly cite to page 146 of the *Connick* opinion.  Opp'n at 11.

United States District Court

For the Northern District of California

Bay's response or lack thereof to her complaints of indecent inmate exhibitionism." Trial Tr. at 2235:17-23.[2]  Similarly, a union representative at Pelican Bay testified that Freitag did not "ever ask [him] to file a union grievance over inmate masturbation at Pelican Bay State Prison." *Id.* at 878:14-16.  Nor have Defendants pointed to any evidence that Freitag was in any way required by her official job duties to raise her concerns with Terhune, even if she had the right to do so as part of the grievance process after first attempting resolution with her immediate supervisor and with the warden.  In addition, Freitag's letter to Terhune was not written on official or departmental stationery and, instead, listed Freitag's home address. Trial Ex. 69 (Ex. C to Manford Decl.).  Beyond that, the contents of the letter fail to ask Terhune for any remedy specific to Freitag, such as a request for a job reassignment that Defendants mentioned during oral argument, and Freitag even referenced the CDC's obligations to the public: "And, the Department of Corrections owes more to the public than to release an injury [sic, presumably should have been inmate] due to slothful negligence or callous indifference." *Id.*  Such language "undoubtedly 'bore similarities to letters submitted by numerous citizens every day.'" *Freitag*, 468 F.3d at 545 (quoting *Ceballos*, 126 S. Ct. at 1960).  Based on the evidence presented at trial, the Court therefore concludes that Freitag's letter to Terhune was written not as an employee, but as a citizen.[3]

The Terhune letter is indistinguishable in all material respects from Freitag's letter to Senator Polanco.  Defendants apparently acknowledge this fact by arguing that, just as the Terhune letter was part of Freitag's official job responsibilities, so was the Polanco letter. For instance, Defendants argue that, like her letter to Terhune, Freitag's letter to Senator Polanco, as chair of the joint legislative prison operations committee, "could also be considered to have been in Freitag's chain of command" and thus part of her "official

---

[2] Although Freitag cited this page of the transcript in her reply brief, she failed to submit a copy to the Court via a supporting declaration.  Nor did Freitag submit copies of *any* of the portions of the trial transcript or other trial documents cited in her opening or reply briefs.  It is insufficient simply to cite to entries in the Court's docket.  Copies of cited documents must be submitted via a supporting declaration.  If either party fails to comply with this rule in the future, they may expect the imposition of monetary sanctions.

[3] The Court considered only the evidence at trial and did not rely on any of the disputed declarations submitted by Freitag in connection with the instant motion.

6

1   responsibilities." Opp'n at 7.  Defendants later assert that Terhune and Polanco were in

2   Freitag's "chain of command" and had "oversight authority" at Pelican Bay, and that

3   therefore Freitag's job responsibilities "oblige[d] her to report her concerns about inmate

4   harassment, and PBSP's response to it" to both individuals.  *Id.* at 15.  A primary flaw in

5   Defendants' argument is that the Ninth Circuit squarely held that Freitag was not acting

6   pursuant to her official job duties when writing to Polanco.  *Freitag*, 468 F.3d at 545.  By

7   analogy, it can be said that she also was not acting pursuant to her official job duties when

8   writing to Terhune outside of the formal grievance process.  "Freitag does not lose her right

9   to speak as a citizen simply because she initiated the communications while at work or

10  because they concerned the subject matter of her employment."  *Id.*

11

12  **II.      Whether Defendants Are Protected by Qualified Immunity**

13          Defendants next argue that *Ceballos* created such a change in the law that Defendants

14  Ayers and Schwartz are entitled to qualified immunity on Freitag's First Amendment claim.

15  The Court rejects this argument.[4]  The only rights at issue in this case that were not clearly

16  established in light of *Ceballos* were a public employee's rights regarding speech made in the

17  course of performing his or her official duties.  *Ceballos* did not change the long-standing

18  right of a public employee to speak out on matters of public concern as a citizen, as long as

19  that right was not outweighed by the government's interests in suppressing such speech.  *See,*

20  *e.g., Connick*, 461 U.S. 138; *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979);

21  *Perry v. Snidermann*, 408 U.S. 593 (1972); *Pickering*, 391 U.S. 563.  Prior to *Ceballos*, there

22  may have been some uncertainty regarding the legality of retaliating against a public

23  employee who spoke as part of his or her official job responsibilities on a matter of public

24  concern; however, there was no uncertainty – nor is there any now, following *Ceballos* – that

25  a public employee speaking as a citizen on a matter of public concern is entitled to the

26  protections of the First Amendment (unless the employer is justified in restricting such

27  _____

28          [4]Additionally, the Court notes that qualified immunity was not an issue that the Ninth
Circuit remanded to this Court for further consideration.

United States District Court

For the Northern District of California

1    speech due to factors, such as disruption of the workplace, not present here).  *Ceballos* did

2    not establish a new right; it only narrowed the scope of an existing one.  Freitag's First

3    Amendment right to contact the director of the CDC, a state senator, and the Inspector

4    General as a concerned citizen were clearly established during the relevant time period, and

5    Defendants could not have reasonably believed that their actions against Freitag were lawful.

6

7    **III.    Whether the Erroneous Jury Instruction on Protected Speech Was Harmless**

8         The Court now turns to the second issue remanded by the Ninth Circuit:

9              whether the jury instruction, which included as examples of
             protected speech either two or three items of unprotected speech,

10            was more probably than not harmless.  *See Swinton*, 270 F.3d at
             805.  In other words, is it more likely than not that the jury

11            verdict was not affected by the erroneous inclusion of the two or
             three examples of unprotected speech?  Given the district judge's

12            expertise and his familiarity with the facts in the lengthy trial
             over which he presided, we think that he is best equipped to

13            answer these questions in the first instance.

14   *Freitag*, 468 F.3d at 546 (citing *Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001)).[5]

15   Thus, this Court must determine whether it is more probable than not that the jury would

16   have reached the same verdict had it not considered "Freitag's internal reports of inmate

17   sexual misconduct and documentation of the prison's failure to respond," but instead only

18   considered the speech that remains protected following *Ceballos* – i.e., Freitag's letter to

19   Terhune, her letters to Polanco, and her oral and written communication with the Office of

20   the Inspector General.  *Id.* at 546; *see also, e.g., Haddad v. Lockheed Cal. Corp.*, 720 F.2d

21   1454, 1459 (9th Cir. 1983) (holding that the harmless error standard in the context of an

22   erroneous civil jury instruction is whether "the jury's verdict is more probably than not

23   untainted by the error").  The question is not whether the jury considered the unprotected

24   speech; instead, the question is whether the jury would still more probably than not have

25   found Defendants Schwartz and Ayers liable for First Amendment retaliation even if it did

26   not consider such speech.  The harmless error standard differs from the standard for

27   ───────────────────

28        [5]In light of the Ninth Circuit's specific instruction to this Court to decide this issue,
     Freitag's argument that Defendants failed to preserve the issue of erroneous jury instructions
     is unpersuasive.  The appellate court evidently found the issue to be preserved on appeal.

United States District Court

For the Northern District of California

1  reviewing a verdict for sufficiency of the evidence in that "[i]n reviewing a civil jury

2  instruction for harmless error, the prevailing party is not entitled to have disputed factual

3  questions resolved in his favor because the jury's verdict may have resulted from a

4  misapprehension of law rather than from factual determinations in favor of the prevailing

5  party." *Caballero v. City of Concord*, 956 F.2d 204, 207 (9th Cir. 1992).

6          Based on this Court's knowledge of the facts presented at trial, it concludes that the

7  erroneous jury instruction was harmless for the reasons discussed below.  Defendants do not

8  dispute that Freitag's counsel's arguments at trial focused the retaliation claims on the

9  communications Freitag made with Terhune, Polanco, and the Office of the Inspector

10  General, nor do they dispute that Freitag's "testimony at trial regarding retaliatory acts by

11  [Ayers and Schwartz] dealt with what happened to her *after* she had exercised her First

12  Amendment rights by writing to Director Terhune and Senator Polanco." Mot. at 5.

13  Although Freitag's case may have been bolstered by the evidence regarding Freitag's internal

14  complaints and documentation of Pelican Bay's failure to respond, the Court is confident that

15  the jury would more probably than not have reached the same verdict had the jury only

16  considered Freitag's letters to Terhune and Polanco and her written and oral communications

17  with the Office of the Inspector General.  As the Ninth Circuit explained, "[t]here can be no

18  serious dispute that substantial evidence supports the jury's findings" that Defendants

19  Schwartz and Ayers took adverse employment actions against Freitag – including Ayers's

20  and Schwartz's initiation of several internal affairs investigations and both Defendants'

21  approval of Freitag's suspension and termination – and that Freitag's speech was a

22  substantial or motivating factor in those adverse actions.  *Freitag*, 468 F.3d at 543.

23  Defendants' assertions to the contrary are simply unavailing.  For example, in denying

24  Defendants' motion for a new trial, this Court made the following findings regarding

25  Defendant Schwartz:

26          Defendants do not dispute that Schwartz signed off on the
          preliminary notice of adverse action that led to Plaintiff's
27          termination, recommended the initiation of at least one Internal
          Affairs investigation of Plaintiff, and chose not to include
28          Plaintiff in a meeting with female officers to discuss their

1

2

3

4

5

6

7

> concerns about inmate exhibitionist masturbation.  Defendants also do not dispute that Schwartz reduced a rules violation report that Plaintiff wrote regarding inmate  "Goldwire" Jackson from a Division B offense to a Division F offense, though they contend that the reduction was actually ordered by another CDC official, and that Schwartz's role was a ministerial one.
>
> . . . .  Schwartz's actions contributed to the building of an unfavorable personnel file and to the perception that Plaintiff was a dishonest officer, the grounds on which Ayers relied in dismissing her from her position at Pelican Bay.  Moreover, Plaintiff's own testimony supports her position that Schwartz's actions caused her emotional distress.

8   Aug. 11, 2003 Order Denying Defs.' Mot. for New Trial at 14.  Notably, the evidence

9   regarding Schwartz's actions against Freitag extend far beyond the fitness-for-duty

10  examination on which Defendants' opposition focuses.

11          Given the substantial evidence of retaliation presented in this case, this Court finds

12  that the erroneous inclusion of two examples of unprotected speech in the jury instructions

13  was harmless under the governing standard.  Even if it is assumed that the jury believed that

14  Defendants Schwartz and Ayers were liable for retaliation based on Freitag's unprotected

15  speech, the weight of the evidence regarding retaliation for Freitag's protected speech more

16  than amply supports a finding of liability on that conduct as well.  Thus, while not an

17  absolute certainty, it is more likely than not that the jury's verdict would have been the same

18  had the jury been given the proper instruction.  Accordingly, the Court finds that the

19  erroneous jury instruction resulted in only harmless error.

20

21  **IV.    Whether the Damages or Attorneys' Fees Awards Must Be Reduced**

22          Finally, the Ninth Circuit remanded the jury's compensatory and punitive damages

23  awards, as well as the issue of attorneys' fees, for reconsideration "if necessary."  *Freitag*,

24  468 F.3d at 547.  The appellate court indicated that it would have upheld the damages award

25  had it not remanded Freitag's § 1983 claim, and this Court was instructed to reconsider the

26  damages and attorneys' fees awards only if it were to find that the erroneous jury instruction

27  was not harmless and that the § 1983 verdict had to be modified.  The court made these

28  statements after it reversed the verdict against Defendant Lopez; thus, it implicitly rejected

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Defendants' argument that reversal of the verdict against Lopez requires reversal of the entire

2   damages award because the special verdict form failed to apportion damages among

3   Defendants.  In addition, Defendants did "not challenge on appeal the fact that the jury held

4   them jointly and severally liable for the entire award."  *Id.*  Because this Court has ruled that

5   the error in the jury instruction was harmless, and that the § 1983 verdict against Defendants

6   Schwartz and Ayers must therefore be allowed to stand, the Court finds it unnecessary to

7   review the compensatory and punitive damages awards on remand.

8        As to the attorneys' fees award, because the Ninth Circuit reversed the § 1983 verdict

9   against Defendant Lopez, Freitag obviously can no longer be considered a prevailing party as

10  to that claim.  However, the Court does not find any reason to alter its attorneys' fees award.

11  Prior to the appeal, Defendants argued that Freitag's attorneys' fees award must be reduced

12  because the jury found five out of eight individual defendants not liable on Freitag's § 1983

13  First Amendment claim.  Oct. 17, 2003 Order Awarding Attorneys' Fees & Costs at 8.  The

14  Court explained that in cases such as this one, where a plaintiff prevails on some issues but is

15  unsuccessful on others, a reduction in fees may be appropriate if the unsuccessful claims are

16  not "related" to the successful claims or if the plaintiff failed to obtain an "excellent result" at

17  trial.  *Id.* at 9 (citations omitted).  This Court found that no reduction in fees was necessary

18  because the retaliation claims were all intertwined and because Freitag did obtain an

19  excellent result.  *Id.* at 9-10.  That Freitag is no longer prevailing as to one additional

20  defendant does not sufficiently alter the Court's analysis such that any reduction in the

21  attorneys' fees award is necessary.

22

23  **CONCLUSION**

24       For all of the reasons discussed above, this Court GRANTS Freitag's motion

25  regarding the remanded issues in its entirety.  It appears that the only remaining issues in this

26  case concern Freitag's intention to file a motion for supplemental attorneys' fees and costs

27  and her collection of the full amount of fees and costs awarded by the Court on October 17,

28  2003.  The parties shall first attempt to resolve these issues by meeting and conferring.  If

they are unable to do so, they may request a referral back to Magistrate Judge James or to any other magistrate judge in San Francisco.  The parties shall file a joint status statement regarding their meet-and-confer efforts and any other outstanding issues in this case on or before **Monday, July 16, 2007.**  After reviewing this joint statement, the Court may schedule a further case management conference if it appears that one would be helpful, or the Court may instead choose to issue an appropriate scheduling order.

**IT IS SO ORDERED.**

Dated:   06/06/07

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

United States District Court
For the Northern District of California

12