UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA L. FREITAG,<br><br>        Plaintiff,<br><br>   v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>        Defendants. | No.  C00-2278 TEH(BZ)<br><br>**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUPPLEMENTAL ATTORNEYS' FEES AND COSTS** |

    On July 25, 2008, the Honorable Thelton E. Henderson referred to me for a report and recommendation plaintiff's motion for supplemental attorneys' fees and costs, which came on for hearing December 3, 2008.  Plaintiff requests $550,808.00 in attorneys' fees and $11,631.05 in costs pursuant to the fee shifting provisions set forth in 42 U.S.C. § 1983 and 42 U.S.C. § 2000e-5(k), which provide that the court, in its discretion, may allow the prevailing party reasonable attorneys' fees as costs.  Plaintiff seeks all of the hours her attorneys claim they reasonably spent after September 30, 2003, while litigating the case on and after appeal, multiplied by a reasonable hourly rate.  Plaintiff

1

does not seek any enhancement or multiplier.

Defendants claim that plaintiff waived her right to attorneys' fees on appeal by failing to file a motion for fees with the Ninth Circuit Court of Appeals; that the claimed hourly rates are excessive; and that the number of hours billed by plaintiff's attorneys are excessive and improperly include duplicative, vague, and clerical tasks.

*Waiver of Appellate Fees*

Defendants first argue that plaintiff waived an award of appellate fees because she failed to file a timely request for fees in the Ninth Circuit Court of Appeals pursuant to Ninth Circuit Rule 39-1.8, which incorporates the time limits set forth in Rule 39-1.6.[1] Defendants acknowledge that plaintiff timely filed a motion to transfer consideration of attorneys' fees to the district court pursuant to Rule 39-1.8, but assert that plaintiff should have complied with Rule 39-1.6(b)(1)-(3) by filing a timely attorneys' fees motion in addition to her motion to transfer.[2] Defendants acknowledge that they did not oppose the motion to transfer.

---

[1] Ninth Circuit Rule 39-1.6(a) requires that a request for attorneys' fees "be made no later than fourteen days after the expiration of the period within which a petition for rehearing may be filed, unless a timely petition for rehearing is filed. If a timely petition for rehearing is filed, the request for attorneys' fees shall be filed no later than fourteen (14) days after the court's disposition of the petition."

[2] The other documents that a party is required to file include, but are not limited to, a detailed itemization of the tasks performed each date and the amount of time spent by each lawyer and paralegal on each task as well as an affidavit or declaration attesting to the accuracy of the information provided. Ninth Circuit Rule 39-1.6(b)(1)-(3).

Defendants' reliance on <u>Cummings v. Connell</u>, 402 F.3d 936 (9th Cir. 2005), to support their assertion is misplaced. In <u>Cummings</u>, the Ninth Circuit vacated a district court's order awarding attorneys' fees incurred on appeal because the party seeking attorneys' fees had filed neither a request for attorneys' fees nor a request to transfer the consideration of appellate fees to the district court with the Circuit. Accordingly, the <u>Cummings</u> court concluded that it never transferred the request to the district court and that the district court was therefore " . . . not authorized to rule on the request for appellate attorneys' fees." <u>Id.</u> at 947-48. Here, the Ninth Circuit did transfer the attorneys' fees motion to this court for consideration, so plaintiff's request for transfer was timely.[3] Additionally, I do not interpret the applicable Ninth Circuit Rules as requiring a party who is seeking appellate fees and wishes for the fee award to be made by the district court to file both an attorneys' fees motion as well as a motion requesting that the attorneys' fees motion be transferred.[4] To the extent that there is any ambiguity in

---

[3] Significantly, the Ninth Circuit denied plaintiff's cost bill on the grounds that it was untimely. (Order Denying Mot. for Award of Costs, Dec. 20, 2006.) It is hard to understand why the Ninth Circuit would have granted the motion to transfer the attorneys' fee to the district court if it believed that the motion was untimely because no fee petition had been filed.

[4] In <u>Hobson v. Orthodontic Centers of America</u>, No. CS-02-0886, 2007 U.S. Dist. LEXIS 44710, at *7 (E.D. Cal. June 19, 2007), the court stated, "[w]hen a motion to transfer is filed, it is not clear that the attorney's fees motion itself has to be filed at all with the Ninth Circuit. *Cummings* held only that the absence of the transfer meant that the district court was not authorized to rule on the request for appellate attorney's fees."

3

the Ninth Circuit Rules that could lead to such an interpretation, because the Rules seek to implement a remedial statute whose goal is to reward plaintiffs whose attorneys win civil rights cases, they should be construed in favor of the plaintiff.[5]

In light of the fact that plaintiff timely filed her motion for transfer, I recommend that the Court award plaintiff appellate fees.

*Unreasonable Hourly Rates & Excessive Hours*

Defendants next argue that plaintiff's lodestar should be reduced because she has requested unreasonable hourly attorney rates. Defendants contend that the hourly rates sought by her counsel should be reduced because the billing rates contained in the "Laffey Matrix" demonstrate that the rates requested by plaintiff's counsel "are not 'prevailing'" market rates. (Def.'s Opp. to Pl.'s Mot. for Attorneys' Fees, p.12.) Based on the Laffey Matrix, which suggests that a reasonable fee for an attorney with 20 years experience is $482.00, defendants assert that a reasonable hourly rate for each of Ms. Price, Mr. Burris, and Mr. Ralston is $525.00 an hour.

In this Circuit, the starting point for determining reasonable fees is not the Laffey Matrix,[6] but the "lodestar,"

---

[5] *See e.g.*, Sagers v. Yellow Freight System, Inc., 529 F.2d 721, 739 (5th Cir. 1976).

[6] While the Laffey Matrix may be some evidence of the prevailing rate, I do not recommend that the Court rely exclusively on the Laffey Matrix, as defendants request. The Laffey Matrix has not been adopted by the Ninth Circuit and its somewhat mechanical approach does not appear to consider all the factors which the Ninth Circuit has deemed important. *See* Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975),

4

1  a calculation obtained by multiplying the number of hours
2  reasonably expended on litigation by a reasonable hourly rate.
3  *See* Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir.
4  1987) (citing Hensley v. Eckerhart, 461 U.S. 424 (1983)).  In
5  determining a reasonable number of hours, the court must
6  review detailed time records to determine whether the hours
7  claimed by the applicant are adequately documented and whether
8  any of the hours were unnecessary, duplicative or excessive.
9  Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir.
10 1986), *reh'g denied*, *amended on other grounds*, 808 F.2d 1373
11 (9th Cir. 1987).  To determine a reasonable rate for each
12 attorney, the court must look to the rate prevailing in the
13 community for similar work performed by attorneys of
14 comparable skill, experience, and reputation.  Id. at 1210-11.
15    In calculating the lodestar, the court should consider
16 any of the factors listed in Kerr that are relevant.  Jordan,
17 815 F.2d at 1264 n.11 (noting that the Ninth Circuit no longer
18 requires that the district court address every factor listed
19 in Kerr).[7]  The burden to submit evidence that supports the

---

*cert. denied* 425 U.S. 951 (1976).  For example, the Laffey Matrix produces the same hourly rate for all three of plaintiff's lead counsel even though Mr. Ralston has been practicing law for 20 years more than Ms. Price.  This seems inconsistent with the Ninth Circuit's mandate that the Court set an hourly rate which reflects that attorney's experience.

[7]    In Kerr, the Ninth Circuit adopted the 12-factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  This analysis looked to the following factors for determining reasonable fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skilled requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)

5

Case 3:00-cv-02278-TEH   Document 558   Filed 12/08/08   Page 6 of 18

hours worked and the rates claimed is on the party seeking fees.

*Unreasonable Hourly Rates*

Plaintiff has calculated her lodestar using the following hourly rates: (1) Ms. Price -- $550 per hour for all work done since September 30, 2003, (2) Mr. Burris -- $650 per hour for all work done since September 30, 2003, and (3) Mr. Ralston -- $700 per hour for all work done since August 2, 2005.

In 2003, this Court set the hourly rates for the attorneys who worked on plaintiff's case prior to the appeal. (*See* Order Awarding Attorneys' Fees and Costs, Oct. 17, 2003 (2003 Order)). In so doing, the Court considered many of the Kerr factors, finding for example, that the litigation raised "significant and difficult" issues which occurred in a remote part of the state, and were undertaken by counsel at "substantial risk." (2003 Order p.1.) The Court set Ms. Price's hourly rate at $400/hour and Mr. Burris' hourly rate at $450/hour. (Id. p.5.) The question now is how much those rates have increased in five years.

*1. Pamela Price and John Burris*

Plaintiff seeks a rate of $550.00/hour for Pamela Price and $650.00/hour for John Burris. Plaintiff has submitted declarations indicating that this rate is consistent with the prevailing market rate for someone with their skills and

---

time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

6

experience. As previously noted, the burden is on plaintiff to produce satisfactory evidence that her requested rates are reasonable within the context of the prevailing market rate. The declarations contain some helpful factual information, particularly those of Ballar and Finberg. Yet good portions of plaintiff's declarations are largely conclusory. They often rely on orders adopting hourly rates that were uncontested or part of a settlement. They do not address such matters as whether plaintiff's counsel have ever charged or been paid the rates they seek or ever been awarded the rates they seek.[8] They do not consider whether the hourly rates for these counsel, each of whom is located in the East Bay, should be the same as the market rate for counsel in San Francisco, given that overhead is lower in the East Bay.[9] Nor do they address what would be the market rate in 2008 for an attorney whose market rate in 2003 was $400 or $450 per hour.[10]

---

[8] Mr. Burris declares that he charges some clients, such as professional athletes and entertainers, $650 an hour. However, the standard for awarding fees in civil rights cases is to set a rate that will attract attorneys to take such cases which likely will be less than wealthy professional athletes and entertainers are willing to pay. See Chalmers v. Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing White v. City of Richmond, 713 F.2d 458, 461 (9th Cir. 1983)). He was also recently awarded that rate by Judge Illston as part of a settlement in Satchell v. Federal Express Corp., C03-2659 (Docket No. 778). The rate was not challenged.

[9] As Ms. Price acknowledged during argument, she does not pay her associates San Francisco salaries.

[10] The exception is Mr. Schneider, who opines in conclusory fashion that the proposed increases for Ms. Price of $150 over a five year period and for Mr. Burris of $200 over a five year period are reasonable. In 2003 this Court increased Ms. Price's rate by $50 over the rate Judge Orrick had awarded her 5 years earlier, which undercuts Mr. Schneider's opinion. See fn. 14 supra.

7

Finally, none of the attorneys comment on the fact that during the past year, there has been a general resistance to the escalation in hourly billing rates. *See e.g.*, Zusha Elinson, *Early Opposition to Rate Hikes*, THE RECORDER, November 12, 2008, at 1; Eric Young, *Law Firms Try to Limit Costs, Fees*, SAN FRANCISCO BUSINESS TIMES, November 19, 2007. Based on my own familiarity with prevailing market rates[11], I am aware that billing rates for Oakland attorneys generally are lower than for San Francisco attorneys[12], in part because the overhead costs associated with the practice of law are lower in the East Bay than they are in San Francisco.[13]

Accordingly, given the declarations submitted by Ms. Price and Mr. Burris, the supporting declarations submitted by other attorneys, my knowledge of prevailing rates and the other factors mentioned in this Report, I recommend that the Court award Ms. Price an hourly rate of $525/hour, $125.00 an hour more than she received in 2003.[14] I recommend the court

---

[11] See <u>Saldana-Neily v. Taco Bell of America, Inc.</u>, No. C04-04571, 2008 WL 793872, at *6 (N.D. Cal. March 24, 2008) and the cases cited therein.

[12] See generally the Report and Recommendation dated September 25, 2006, filed in <u>Franet v. County of Alameda Social Services Agency</u>, No. C02-3787.

[13] I am aware that this Court does not distinguish between the overhead of small and large firms. *See* 2003 Order n.2. The distinction I draw is between different localities. Even large East Bay firms, in my experience, have lower rates than large San Francisco firms.

[14] In setting Ms. Price's rate in 2003, the Court relied in part on the fact that Judge Orrick had awarded her an hourly rate of $350.00 in 1998. The Court then increased her rate $50.00 to reflect the five year passage of time. However, given the showing that plaintiff has made of prevailing rates and given my knowledge of how rates have increased in recent years, I do not believe that simply raising Ms. Price's rate

8

award Mr. Burris $575.00/hour, $125.00 more than he received in 2003.

Defendants also contend that the hourly rates sought for Ms. Price's three associates, Ms. Milburne, Ms. Roberts, and Ms. Shukla, should be readjusted according to the Laffey Matrix and reset at rate of $225 per hour.[15]  According to Ms. Price's declaration, Ms. Milburne and Ms. Shukla were both admitted to the California State Bar in 2003, and Ms. Roberts was admitted in 2005.  While plaintiff has submitted little information to support the hourly rates requested by Ms. Price's associates, I recommend that in light of this Court's 2003 Order[16], as well as my own familiarity with the prevailing market rates for fifth and third-year associates, the Court should set the rate for Ms. Milburn and Ms. Shukla at $300/hour and for Ms. Roberts at $275/hour.

*2. Stephen Ralston*

Mr. Ralston was not counsel for plaintiff in 2003 so the Court did not establish a rate for him.  Mr. Ralston seeks $700.00/hour.  Mr. Ralston was the lead counsel on appeal. Mr. Ralston was admitted to the California State Bar in January of 1963 and has extensive experience in the area of

---

$50.00 an hour to account for the last five years would be reasonable.  But it certainly suggests that an increase of $125.00 an hour would be reasonable and defendant does not challenge that rate.

[15]   Plaintiff has requested hourly rates of $350 for Ms. Milburn and Ms. Shukla and $300 for Ms. Roberts.

[16]   In the 2003 Order, the Court awarded Michael Douglas, who at the time had been practicing for ten years, $325/hour, and awarded Curtis Allen, who at the time had been practicing for six years, $250/hour.

9

employment discrimination and civil rights litigation. (Ralston Decl. at ¶¶ 3-4.) Mr. Ralston has worked with the NCAAP Legal Defense and Educational Fund as both Deputy Director Counsel and as a Senior Staff Attorney. (Id.) Mr. Ralston has served as trial counsel on numerous cases, and has extensive experience in appellate work as demonstrated by his participation in over ninety cases heard before the Supreme Court, including five cases that he argued. (Ralston Decl. at ¶ 5.) Mr. Ralston has also argued over seventy-five cases in federal courts of appeals nationwide as lead counsel, co-counsel, supervising counsel, and counsel for amicus curiae. (Id.) Mr. Ralston has also served as a lecturer or panelist at numerous symposia and seminars, including those sponsored by the Employment Law Litigation Institute, the National Public Employer Labor Relations Association, and the American Arbitration Association. (Ralston Decl. Ex. M.)

I recommend the Court set Mr. Ralston's hourly rate at $625.00 an hour.[17] While this is at the low end of the range proposed by Mr. Baller, it appears that Mr. Ralston practices out of his home and therefore has less overhead than most attorneys.

*Unreasonable Hours*

Defendants next contend that the number of hours used by plaintiff to calculate the lodestar figure are unreasonable

---

[17] Defendants submitted a declaration by Vincent Scally, who stated that in 2006, Ms. Price told him in a written settlement demand that Mr. Ralston's hourly rate for 2006 was $550.00/hour. While no motion to strike was made by plaintiff, I have not relied on the letter. See Coles v. City of Oakland, No. C03-2961, 2007 WL 39304, at *6 (N.D. Cal. Jan. 4, 2007).

10

because they include entries that are redundant (*i.e.*, duplicative), vague, and clerical in nature.[18]  Faced with a similar argument asserted by defendants in 2003, the Court set forth the applicable law with regard to assessing whether a fee applicant has met her burden of demonstrating whether sound billing judgment was utilized by the attorneys whose fees are being sought.  (*See* 2003 Order p.6.)  It is with regard to the law set forth in the Court's 2003 Order that I recommend the following:

*1. Duplication of Effort*

Defendants challenge $71,727.50 in fees based on 110.35 hours spent by Mr. Burris on post-trial work.[19]  Defendants assert that Mr. Burris acted "entirely as a consultant" to Ms. Price and Mr. Ralston during the appellate stages of this case and that he did not "perform any substantive work."  (Def.'s Corrected Opp. to Pl.'s Mot. p.15.)  In response, plaintiff argues that the majority of Mr. Burris' time (71.15 hours) was spent developing the "Freitag Remedial Plan", which the Special Master "expected both Ms. Price and Mr. Burris to fully participate in . . . ."  (Pl.'s Reply to Def.'s Opp. p.16.)  Plaintiff argues that the remaining time spent by Mr. Burris (12.05 hours on the first appeal, 11.20 hours on the

---

[18] Plaintiff seeks compensation for a total of 1,000.41 hours, including 567.76 hours for Price and Associates, 110.35 hours for Mr. Burris, and 322.2 hours for Mr. Ralston.

[19] In plaintiff's Reply Brief, she provides an updated fee chart.  In this fee chart, plaintiff requests a total of 110.35 hours ($71,727.50) for worked performed by Mr. Burris.  This is a 4.6 hour increase from the hours requested in the original motion for attorneys' fees, and represents additional hours spent by Mr. Burris in association with this motion.

11

1  remand, and 15.95 hours on fee applications) was not
2  duplicative because Mr. Burris had a responsibility, as trial
3  counsel familiar with the case, to attend case management
4  conferences, settlement conferences, and to review the drafts
5  of the appellate briefs.
6      In deciding whether work was unnecessarily duplicative,
7  courts must consider the circumstances of the individual case,
8  as  "[p]articipation of more than one attorney does not
9  necessarily amount to unnecessary duplication of effort."
10 Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286
11 (9th Cir. 2004).  Here, the injunctive relief awarded to
12 plaintiff involved the development of a remedial plan.  In
13 their supplemental declarations, Mr. Burris and Ms. Price
14 state that the Special Master made it clear to them that Mr.
15 Burris was to participate fully in the development of the
16 remedial plan and that meetings were scheduled so that both
17 attorneys could be present.  The defendants do not dispute
18 that this was the Special Master's position.  Instead, they
19 assert that this Court had earlier stated that it would not
20 pay for both Mr. Burris and Ms. Price to work on the remedial
21 plan.  (See Order Adopting Special Master's Report and
22 Recommendations July 15, 2004 p.6.).  Since the Special Master
23 requested Mr. Burris to participate, I would find it
24 reasonable for Mr. Burris to do so and to be paid for his
25 time, especially since defendants generally had more than one
26 attorney present.[20]  Accordingly, I do not find that the 71.15

---

[20]     However, if the Court concludes that it is not prepared to pay for both Mr. Burris and Ms. Price to work on the remedial plan, I recommend that Mr. Burris' claim be

12

1  hours that Mr. Burris spent on the development of the remedial
2  plan were unnecessary duplicative, and do not recommend
3  reducing Mr. Burris' hours on that basis.  As for the
4  remainder of Mr. Burris' hours, I cannot say that the thirty
5  or so hours spent by Mr. Burris over a course of five years as
6  lead counsel on the appeals and remanded issues was
7  unnecessarily duplicative.  Therefore, I recommend that Mr.
8  Burris be awarded fees for all 110.35 requested hours.
9  *Pamela Price and Associates*
10      Defendants also challenge $45,003.75 in fees based on
11  75.47 hours spent by Ms. Price on post-trial work.  Defendants
12  argue that Ms. Price "was not the lead attorney on the
13  appeals" and that her involvement with the appeals should have
14  therefore been limited.  (Pl.'s Reply to Def.'s Opp. p.16.)
15  Defendants claim that the hours are duplicative because they
16  were spent "reviewing items that Ralston reviewed, reviewing
17  Ralston's work product, or communicating with Ralston and
18  Burris about Ralston's work product."  (Pl.'s Reply to Def.'s
19  Opp. p.16.)  Defendants also challenge the hours claimed for
20  the work performed by Ms. Shukla[21] and the work of Ms.
21  Roberts, and assert that the hours requested for the work
22  performed by these attorneys should be denied entirely, and
23  that Ms. Milburn's fee request should be reduced by 17.16

---

reduced by 67.05 hours.  This would result in Mr. Burris being paid 3.10 hours of work on the remedial plan; time spent attending and preparing for a hearing which Ms. Price could not attend.

  [21]  Plaintiff does not dispute eliminating 9.30 hours of Ms. Shukla's time given the possible overlap between Ms. Shukla and Ms. Roberts in 2005 regarding work done on the appeals. This deduction is reflected in plaintiff's updated fee chart.

13

1   hours ($6,007.42).

2   Again, I am not persuaded that the work performed by Ms.
3   Price was unnecessarily duplicative.  Ms. Price was retained
4   by plaintiff to litigate this case, and defendants offer no
5   explanation as to why hiring Mr. Ralston, an appellate expert,
6   to aid her with the appeal was unreasonable or unnecessarily
7   duplicative.  Ms. Price argued the first appeal in the Ninth
8   Circuit in March 2006, and in order to adequately prepare, met
9   and conferred with Mr. Ralston.  While defendant's expert, Mr.
10  Trunko, identifies numerous time entries as duplicative (*see*
11  Trunko Decl. Ex. F-4), these entries include time spent by Ms.
12  Price reviewing emails from her client and from Mr. Ralston,
13  and I fail to see how such tasks can be conclusively
14  categorized by Mr. Trunko as unnecessarily duplicative.

15  Neither am I persuaded that any of the time spent by Ms.
16  Price's three associates was duplicative.  In her supplemental
17  declaration, Ms. Price explains exactly how the time of her
18  associates was allocated, which included coordinating efforts
19  with the various amicus organizations who were present in the
20  case, spending time helping Ms. Price prepare for oral
21  argument, and working on what ultimately became a failed
22  attempt at mediation.  None of the entries identified by
23  defendants that have not already been deducted by plaintiff[22]
24  appear to be unnecessarily duplicative.  Accordingly, I do not

---

[22] As noted in Ms. Price's original declaration, Ms. Price already deducted a total of 56.40 hours from the total number claimed for fees for any associate or paralegal who did not spend at least twenty hours on the case. (*See* Price Decl. p.14:10-13).  This represents just over a nine percent reduction in fees already taken by Ms. Price.

14

recommend that the hours of Ms. Price or her associates be reduced on the basis of being unnecessarily duplicative.

*Stephen Ralston*

Finally, defendants challenge $4,025.00 in fees for 5.75 hours spent by Mr. Ralston for "attending excessive or unnecessary meetings." (Pl.'s Reply to Def.'s Opp. p.16.) Specifically, defendants argue that Mr. Ralston did not need to spend time meeting and communicating with Ms. Price or Mr. Burris because he could have relied on his review of the trial record for the purposes of working on the appeals. Defendants do not provide any basis for a finding that having more than one plaintiff's attorney present at conferences with counsel for defendants was unreasonable, and I believe that Mr. Ralston has provided a reasonable explanation for the hours challenged by defendants as duplicative. For example, in his supplemental declaration, Mr. Ralston points out that two of the time entries challenged by defendants relate to a mandatory settlement conference concerning the issues on remand, issues Mr. Ralston had been responsible for briefing before the Ninth Circuit. Generally, duplicative work is not a justification for cutting a fee, unless "the lawyer does *unnecessarily* duplicative work." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008) (emphasis added). Here, Mr. Ralston's involvement in various case management conferences and settlement agreements relating to the disposition of the remanded issues does not seem unnecessarily duplicative. I therefore recommend that Mr. Ralston's fee award not be reduced on this basis.

*2. Vague Billing*

Defendants also challenge $49,240.04 in fees based on 88.03 hours of specific time entries they argue are "vague." Specifically, defendants assert that many of the billing entries "for conferences and e-mails fail to identify the subject matter of the conference or e-mail, making it impossible to determine whether the communication relates to a compensable or non-compensable activity." (Def.'s Corrected Opp. to Pl's Mot. for Attorneys' Fees p.16.)  All of the entries challenged on this basis are entries by Ms. Price or her associates for receiving, reviewing, and drafting emails, or for conferencing and telephone calls that defendants assert do not indicate the subject of such communications or do not indicate the other party or parties involved in the communications.  However, as plaintiffs note, "when the entries are read as a whole, it is clear that the emails or conversations relate to the matters set out in the first part of the [billing] entry." (Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. for Attorneys' Fees p. 12.)  For example, defendants challenge billing entries by Price and Associates from October 2003, which reflect time spent attending to telephone conferences with "Ms. Scott" or "attorney Scott."  Defendants assert that "because the entry does not specify the subject of the conference, it is difficult to determine whether the charge is legitimate." (Def.'s Opp. at 17.)  However, when read in the context of the billing entry, it is clear that the October 2003 entries for "telephone [calls] with Ms. Scott" were in relation to the 2003 motion for attorneys' fees and

16

1   injunctive relief.  In fact, each of the challenged billing
2   entries list a "Matter Name" wherein Ms. Price and her
3   associates and Mr. Ralston listed the specific motion that the
4   billing entries were referencing. (*See* Trunko Decl. Ex. G.)
5   Accordingly, I recommend that the Court decline to reduce
6   plaintiff's attorneys' compensable hours on this basis.

   *3. Clerical Tasks*

8        Defendants next challenge $7,162.50 in fees based on
9   14.98 hours of work performed by plaintiff's counsel that they
10  allege is administrative or clerical.  Defendants argue that
11  tasks such as filing, preparing routine letters, and
12  scheduling, coordinating, and calendaring tasks and travel are
13  clerical duties that are not compensable.  While this may be
14  the case, defendants, with the exception of four entries that
15  identified "calendaring", did not identify the types of tasks
16  listed above in plaintiff's attorneys' billing records.[23]
17  Instead, defendants challenged time entries in plaintiff's
18  attorneys' billing records that contain various references to
19  "instruct secretary." (Trunko Decl. Ex. H.)  Defendants made a
20  similar argument in 2003, and have again failed to cite any
21  authority for the proposition that attorney time spent
22  instructing staff regarding specific duties in a particular
23  case is not compensable.[24]  (*See* 2003 Order.)  Accordingly, I

---

[23] Two of the four "calendaring" entries were submitted by Ms. Price and the other two were submitted by Ms. Milburne. (*See* Trunko Decl. Ex. H.)  Because these tasks are administrative in nature, I recommend that both Ms. Price's and Ms. Milburne's hours be reduced by .5 hours, respectively.

[24] Defendants cite to two cases, neither of which are on point.  For example, in <u>Davis v. City and County of San Francisco</u>, 976 F.2d 1536, 1543 (9th Cir. 1992), the challenged

recommend that the Court decline to reduce plaintiff's fee award on this ground, except as noted for "calendaring" tasks.[25] For the foregoing reasons, I recommend that plaintiff be awarded the following fees and costs:

| Attorney | Hours Requested | Hours Awarded | Rate | Fee Awarded |
|---|---|---|---|---|
| Price | 290.11 | 289.61 | $525 | $152,045.25 |
| Ralston | 322.3 | 322.3 | $625 | $201,437.50 |
| Burris | 110.35 | 110.35 | $575 | $ 63,451.25 |
| Milburn | 147.00 | 146.5 | $300 | $ 43,950.00 |
| Roberts | 60.80 | 60.80 | $275 | $ 16,720.00 |
| Shukla | 69.2 | 69.2 | $300 | $ 20,760.00 |
| Total Fees: | | | | $498,364.00 |
| Costs: | | | | $ 11,631.05 |
| Total Award: | | | | $509,995.05 |

Dated: December 8, 2008

Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-REFS\FREITAG\REPORT AND RECOMMENDATION FOR ATTY'S FEESv2.wpd

---

billing entries were for tasks such as xeroxing and the "filing of pleadings and the travel time associated therewith." That case did not discuss whether attorney time spent instructing staff regarding specific duties is compensable.

[25] In his supplemental declaration, Mr. Ralston agrees that 2.7 hours should be deducted from his total claimed hours for clerical activities, leaving him with a total of 322.3 compensable hours.