IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEANNA L. FREITAG,

         Plaintiff,

    v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

         Defendants.

NO. C00-2278 TEH

ORDER TERMINATING MONITORING OF INJUNCTIVE RELIEF

      This matter comes before the Court on Defendant California Department of Corrections and Rehabilitation's ("CDCR's") motion to terminate the injunction or, alternatively, to modify the injunction-monitoring process in this case. After carefully reviewing the parties' papers and the record, the Court GRANTS IN PART and DENIES IN PART the CDCR's motion. As discussed below, the Court will not terminate the injunction in its entirety, but Plaintiff Deanna Freitag's counsel will no longer be entitled to monitor the injunction.

      There is no dispute that the policies required by the Court's July 16, 2004 order were timely implemented at Pelican Bay State Prison and have since been codified at sections 3000, 3315, 3323, and 3341.5 of Title 15 of the California Code of Regulations and incorporated as Chapter 5, Article 25 of the CDCR's Department Operations Manual. Moreover, eight years of monitoring by Freitag's counsel – four of which were done concurrently with a special master appointed by this Court in *Madrid v. Cate*, Case No. 90-3094 TEH, a case concerning inmates' rights at Pelican Bay – have resulted in no disputes over the CDCR's implementation of this Court's orders. Indeed, in a related case, Freitag's counsel credited the injunctive relief in this case with reducing the number of reported instances of indecent exposure at Pelican Bay. Pls.' Revised Mot. for Class Cert. in

*Berndt v. CDCR*, Case No. 03-3174 PJH, at 17 n.16 (Docket No. 430) ("One strong indication of the need for system-wide injunctive relief is the contrast between the relative decline in reported incidents at Pelican Bay since it has been subject to an injunction and the lack of significant decline at CSP-Sacramento, CSP-Corcoran, and CSP Salinas, which are not under an injunction.").

    Freitag has presented no evidence of any ongoing discrimination or retaliation at Pelican Bay against herself, and, while Plaintiff's opposition cites 2007 and 2008 declarations from two other Pelican Bay guards, the CDCR correctly observes that these guards' subsequent deposition testimony supports the department's position. *See, e.g.,* Michelson Dep. at 82:17-83:24 (stating that she has not witnessed any indecent exposure incidents since 2005 or 2006); *id.* at 114:16-124:15 (acknowledging that in-service training bulletins are required reading, and that various bulletins included indecent exposure policies and invitations to comment); Stanton Dep. at 42:8-48:18 (acknowledging that she "probably" or "likely" read in-service training bulletins that included information on indecent exposure although she did not remember them, and that she never wondered about the Pelican Bay Indecent Exposure Review Committee schedule because she did not care); *id.* at 52:5-12 (agreeing that "indecent exposure incidents" have not been an "area of concern" for her since 1999). Similarly, a third Pelican Bay guard who had provided a declaration in support of the plaintiffs' motion for class certification in *Berndt* withdrew her declaration; she testified at her deposition that it was correct that she had "no complaints about how the Department of Corrections and Rehabilitation is addressing and managing inmates and indecent exposure at Pelican Bay prison." Chisman Dep. at 25:18-22.[1] There is also no other evidence that the CDCR has violated the permanent injunction entered by the Court on August 18, 2003:

> The California Department of Corrections, its agents, officers, successors in office, employees and all persons acting in concert

---

[1] The depositions of Michelson, Stanton, and Chisman were taken in conjunction with the *Berndt* case, and the transcripts were filed as Exhibits 10-12 to the December 23, 2009 Harlan Declaration in that case (Docket No. 281-11). They were referred to, but not electronically filed, as Exhibit 5 to the May 25, 2012 Harlan Declaration in this case (Docket No. 645).

2

> or participating with the department are permanently enjoined from engaging in any employment practices, or taking any other personnel action, for the purpose or with the effect of maintaining a sexually hostile work environment at Pelican Bay State Prison, or otherwise discriminating against any Pelican Bay State Prison employee on the basis of sex. The California Department of Corrections, its agents, officers, successors in office, employees and all persons acting in concert or participating with the department are further enjoined from engaging in any employment practices, or taking any other personnel action, for the purpose or with the effect of retaliating against any Pelican Bay State Prison employee for complaining about, or otherwise opposing, practices made unlawful by Title VII.

Aug. 18, 2003 Order at 8 (Docket No. 355).

Nonetheless, CDCR has cited no authority that compliance with a permanent injunction ordered by a court upon a finding that a defendant violated Title VII is grounds for terminating such an injunction. The Court therefore denies the CDCR's motion to terminate the injunction in its entirety.

However, Freitag's counsel's failure to identify for the CDCR or the Court any violations of the injunctive relief during eight years of monitoring indicates the ineffectiveness of such monitoring. In their papers opposing the CDCR's motion to terminate, Freitag's counsel raised – for the first time – several concerns with the implementation of the injunction. In some cases, however, this is mere speculation. *E.g.,* Moore Decl. ¶ 23 (Docket No. 662) ("It appears to me that requiring staff to seek supervisory approval to attend the meetings may have 'a chilling effect' on their participation."); *id.* ¶ 26 ("Given that Warden Lewis asserts that 'by August 2007, Pelican Bay had become a hub for [indecent exposure] inmates' I would have expected to see a surge in reports sometime in 2007 and 2008 [but did not]."). In others, it is vague and indicates counsel's unwillingness to take action even when they have concerns. For example, Jane Bond Moore asserted that she has unspecified "questions concerning various CDCR forms and procedures which cannot be answered by Ms. [Pamela] Price [Freitag's lead counsel from the inception of this lawsuit], or while she was at the Firm, Attorney Terina Williams [one of Ms. Price's former associates]," but that she refused to approach Defendants' counsel with these questions because she "believ[ed] that not only would [Defendants' counsel] deny any request," but

3

1  that she would "have to listen to a detailed legal argument before being told 'no.'" *Id.* ¶ 18.[2]
2  Many of the expressed concerns are also dated. *E.g., id.* ¶ 24B ("This seemed to be a specific
3  problem in 2010."); *id.* ¶ 26 (speculative problem in 2007 and 2008); *id.* ¶ 27 ("This appears
4  to have been a significant problem in 2010."). Monitoring that does not result in timely
5  identification of potential problems – and sharing those concerns with the opposing party
6  and/or the Court so that any necessary corrective action can be taken – is ineffective and
7  serves no purpose, particularly after eight years of monitoring with no reported instances of
8  noncompliance. Accordingly, the Court finds good cause to discontinue monitoring of the
9  injunction by Freitag's counsel. In addition, because the *Madrid* case has been terminated,
10 all provisions of the injunctive relief in this case concerning the plaintiffs' counsel and
11 Special Master in *Madrid* are also terminated.
12     Finally, the CDCR requests that the Court deny all monitoring fees from January 2012
13 to the present. The Court denies this request. As the Court made clear in July 2009:

> 1. The injunctive relief in this case shall remain in full effect unless and until the Court otherwise orders. The Court will not so order unless good cause exists following a motion by one or more parties. If Defendants seek to terminate the injunction or modify it such that counsel's participation in monitoring shall be disallowed, they shall file an appropriate motion requesting such relief.
>
> 2. As long as the injunction remains in place unmodified, Plaintiff[] shall be entitled to recover reasonable attorneys' fees pursuant to the procedure agreed upon by the parties and set forth on page 2 of their June 29, 2009 joint statement.

21 July 2, 2009 Order (Docket No. 580). The CDCR chose not to file a motion to terminate or
22 modify the injunctive relief until three years later, and Freitag's counsel's entitlement to
23 monitoring fees has not been extinguished until this order. However, the Court has also
24 made clear that "any time spent opposing the CDCR's motion [to terminate or modify the
25 injunction] will not be automatically compensable as monitoring fees, and Freitag's counsel
26 will bear the burden of demonstrating entitlement to any fees and costs she might claim for

---

[2] Ms. Moore began work on this case in March 2012. Moore Decl. ¶ 10. That she had questions that Ms. Price could not answer after eight years of monitoring further underscores the ineffectiveness of monitoring by Freitag's counsel.

4

opposing the motion, including any time spent by an associate attorney." June 6, 2012 Order at 1-2 (Docket No. 653). The parties are ordered to meet and confer to attempt to resolve all outstanding requests for fees and costs by Freitag's counsel. As previously noted:

> the parties have ignored the Court's repeated reminders that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The disputes at issue in this motion, as well as in previous ones, appear to be largely the result of personal animosity between counsel, and the Court will no longer expend its resources or those of a magistrate judge on resolving such disputes. Consequently, if the Court denies Defendants' pending motion to terminate the injunction, thereby continuing Plaintiff's right to recover monitoring fees, the Court will at that time also appoint a special master, whose fees shall be paid by the parties, to resolve all future disputes over attorneys' fees and costs that counsel cannot resolve independently.

June 1, 2012 Order at 6-7 (Docket No. 649). If the parties are unable to resolve the final request for fees and costs, then the Court will appoint a special master. The parties shall file a joint report on whether such an appointment is necessary, or whether fees and costs have been resolved, on or before **December 17, 2012.**

**IT IS SO ORDERED.**

Dated: 11/05/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

5